

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

_____
**United States Bankruptcy Judge**

**Signed June 20, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CHAPTER 11 |
| NORTH PARK TERRACE APARTMENTS V, LTD., | § § § § | |
| DEBTOR. | § § | CASE NO. 10-45828 (DML) |

## MEMORANDUM RULING

Before the court is the question of the amount of the claims of OneWest Bank,

FSB ("OWB") in the above-styled chapter 11 case. The issue arises in the context of

confirmability of Debtor's plan of reorganization, and the court heard testimony

respecting the amount of OWB's claims[1] from Elsy Chale ("Chale"), Loan Servicing

---

[1] OWB filed six secured claims in Debtor's case pertaining to notes and deeds of trust respecting six office buildings owned by Debtor: Capital Center I, Capital Center II, Plaza de las Flores, Sagebursh Texas Office, Sagebrush Office Park and Courtyard at Timarron. Subsequently, on May 10, 2011, OWB filed amended versions of the same claims, and these are the claims the court must now quantify.

Manager of OWB, and Mary Catherine Butler ("Butler"), Debtor's de facto chief financial officer, during the first day of the hearing on confirmation of Debtor's plan, May 18, 2011.[2]

Determination of the amount of OWB's claims is within the court's core jurisdiction. 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (L). This memorandum ruling represents the court's findings and conclusions respecting the amount of OWB's claims. FED. R. BANKR. P. 7052 and 9014. This memorandum ruling will be incorporated in the court's disposition of Debtor's plan of reorganization.

A proof of claim is prima facie valid as to liability, nature and amount. *See* FED. R. BANKR. P. 3001(f); 6 COLLIER ON BANKRUPTCY ¶ 3001.09[2] (16th ed. 2011); *Cal. State Bd. of Equalization v. Official Unsecured Creditors' Comm. (In re Fid. Holding Co., LTD)*, 837 F.2d 696, 698 (5th Cir. 1988). If a claim is objected to,[3] the party objecting must present evidence sufficient to overcome the claim's prima facie validity. *See* 6 COLLIER ¶ 3001.09[2]; *Cal. State Bd. of Equalization*, 837 F.2d at 698. Once the objecting party has met this burden, the party that would have the burden of proof respecting the claim in a non-bankruptcy context will have the burden of proof as to the contest over the claim. *See* 6 COLLIER ¶ 3001.09[2]; *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 15 (2000). In the case at bar, the burden of proof would fall on the creditor outside of bankruptcy. *See Cadle Co. v. Bankston & Lobingier*, 868 S.W.2d 918, 921

---

[2] By agreement of the parties, evidence respecting the amount of OWB's claims and the value of the collateral securing each were to be determined before addressing other aspects of confirmation. Evidence respecting the amount of the claims was presented on May 18 and evidence respecting collateral value was presented that day and at a subsequent hearing held July 13, 2011. At the conclusion of the June 13 hearing the court announced its findings respecting the value of OWB's collateral.

[3] Although the present context is not that of claim objections, Debtor has objected to OWB's claims and the law applicable to objections would control as well in the confirmation context.

(Tex. App.—Fort Worth 1994, writ denied).  That burden of proof, as is usually true in civil proceedings, is met by a preponderance of the evidence.

There is no dispute respecting Debtor's liability to OWB or OWB's secured status.  The parties' dispute is limited to the amount of OWB's claims.  The parties' differences as to amount, in turn, depend on (1) whether certain payments by Debtor were not credited to Debtor's accounts by OWB and (2) the validity of certain charges made by the bank for legal fees, appraisals, environmental inspections, foreclosure fees, late fees, title fees and demand fees.[4]

Chale was offered as OWB's representative to substantiate OWB's claims.  Unfortunately, Chale was only employed by OWB on April 4, 2011, and thus had no personal knowledge of Debtor's dealings with OWB.[5]  She testified, rather, that she relied on OWB's payment history respecting the loans to Debtor, other OWB employees and the bank's computer records to generate the numbers making up the claims.  Unfortunately, Chale did not bring the payment history of the loans or the other documents she relied on to court, so the court has only her testimony, to which Debtor interposed no objection, and the claims themselves[6] from which to assess the bank's proof of the amount it is owed.

Butler has been employed by Debtor for many years, and she oversaw Debtor's financial transactions with OWB (and its predecessor, La Jolla Bank) since the inception

---

[4] The validity of some of these charges depends on when and whether each note went into default, which in turn depends to some extent on whether payments were properly credited.

[5] She responded at least 14 times to questions, including about the elements of OWB's claims, "I don't know," or similarly.

[6] Though included among OWB's exhibits, the claims were not offered into evidence.  As they are part of the court's record, however, the court may take judicial notice of them in this contested matter.

of the loans. Chale testified that as to all of OWB's loans to Debtor (except for a line of credit) no checks were received from Debtor and cashed by OWB after a series of dates ending with March 1, 2010. Butler, in contrast, testified (without objection) that checks were in fact mailed to OWB after dates stated by Chale to be the dates of the last payment on each loan. Some of those checks were cashed by OWB, according to Butler. Unfortunately, Debtor produced neither checks nor bank statements to support this testimony. Butler testified she did not bring these documents to the hearing because she did not think she would need them.

The court is somewhat puzzled that the parties – each of which clearly knew that there was a dispute about the amount of OWB's claims – would not have produced documentation in support of their contentions (not even at the subsequent June 13 hearing) but would rather rely on (and allow into evidence) testimony respecting those documents. Given that the parties conducted discovery prior to May 18, 2011, they surely were aware of what was the best evidence to support their positions. *See* FED. R. EVID. 1002, 1007. However, the court must rule based on the record before it, regardless of that record's inadequacies.

Given the choice of whether to accept the testimony of Chale or Butler, the court finds the latter's more credible. Chale was not employed by OWB until shortly before the May 18 hearing. She had no personal knowledge of Debtor's prepetition relations with OWB and relied on information provided by others or that she gleaned from the bank's records.

Butler, on the other hand, was personally involved in making payments to the bank; she testified from personal knowledge.[7] Moreover, Debtor's exhibit B-5 (the only exhibit introduced at the May 18 hearing), a series of stop-payment orders on checks sent to OWB, offers some support for her testimony.[8] As Butler testified that payments were made by check to OWB after the dates Chale testified to as the times of last payments, and as Butler testified that at least some of those checks were cashed by OWB, the court finds that Debtor has successfully controverted the prima facie validity of the asserted amount of OWB's claims.

As noted above, OWB has the burden of proof as to the amount of its claims. It has not satisfied that burden. Rather the weight of the evidence supports the conclusion that OWB's claims are not allowable in the amounts they reflect. Because the court finds by a preponderance of the evidence that OWB's claims are incorrect, it will look to Debtor's schedule D to determine the amounts of OWB's claims. Debtor's schedule D lists the claims of OWB as follows:[9]

| Collateral | Claim Amount |
| --- | --- |
| Capital Center I | $1,496,854 |
| Capital Center II | $1,467,177 |
| Plaza de las Flores | $1,356,545 |
| Sagebrush Texas Office | $ 877,164 |
| Sagebrush Office Park | $2,264,157 |
| Courtyard at Timarron | $2,398,739 |

To the extent OWB is oversecured, it will be entitled to post petition interest and fees as permitted by 11 U.S.C. § 506(b). To the extent it is undersecured OWB will have

---

[7] Butler, however, had to correct her original testimony several times to conform it to Debtor's exhibit B-5.

[8] A number of the stop-payment orders were (apparently) directed to checks that were in the amount of full monthly payments on the loans from the bank, contradicting Chale's testimony that no full payments had been sent to OWB at that point in time.

[9] The court combines into the claim amount any portion estimated by Debtor as a deficiency.

unsecured claims.  The findings and conclusions stated in this memorandum ruling will be incorporated by reference in the court's findings and conclusions respecting confirmation of Debtor's plan of reorganization.

# # # # END OF MEMORANDUM RULING # # # #